## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT PAYNE,<br><br>    Plaintiff,<br><br>    v.<br><br>AVEDRO, INC., DONALD J. ZURBAY, JONATHAN SILVERSTEIN, HONGBO LU, GARHENG KONG, REZA ZADNO, and ROBERT J. PALMISANO,<br><br>    Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Robert Payne ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.  This is an action against Avedro, Inc. ("Avedro" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between Avedro and Glaukos Corporation ("Glaukos").[1]

---

[1] Specifically, Avedro, Glaukos, and Atlantic Merger Sub, Inc., a wholly-owned subsidiary of Glaukos, entered into the agreement and plan of merger.

1

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District and the Company is incorporated in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Avedro common stock.

7. Defendant Avedro is an ophthalmic pharmaceutical and medical device company that develops and commercializes products to treat ophthalmic disorders and conditions, primarily associated with corneal weakness. The Company is incorporated in Delaware with principal executive offices located in Waltham, Massachusetts. The Company's common stock trades on the NASDAQ Global Market under the ticker symbol, "AVDR."

8. Defendant Donald J. Zurbay ("Zurbay") is a director of the Company.

9. Defendant Jonathan Silverstein ("Silverstein") is a director of the Company. Defendant Silverstein is a member of OrbiMed Advisors LLC, which is affiliated with OrbiMed Private Investments VI, LP. According to the Proxy Statement, entities "affiliated with OrbiMed Private Investments VI, LP" beneficially owned 24.7% of Avedro's common stock as of August 30, 2019.

10. Defendant Hongbo Lu ("Lu") is a director of the Company.

11. Defendant Reza Zadno ("Zadno") is the President, Chief Executive Officer ("CEO"), and a director of the Company. According to the Proxy Statement, Defendant Zadno beneficially owned 3.4% of Avedro's common stock as of August 30, 2019.

12. Defendant Garheng Kong ("Kong") is a director of the Company. Defendant Kong is the managing member of HealthQuest Venture Management II, L.L.C. ("HealthQuest Management"), which is the general partner of HealthQuest Partners II, L.P. ("HealthQuest"). According to the Proxy Statement, HealthQuest beneficially owned 8.2% of Avedro's common stock as of August 30, 2019.

13. Defendant Robert J. Palmisano ("Palmisano") is a director of the Company.

14. Defendants Zurbay, Silverstein, Lu, Zadno, Kong, and Palmisano are collectively referred to herein as the "Individual Defendants."

15. Defendants Avedro and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

16. Glaukos is an ophthalmic medical technology and pharmaceutical company that focuses on the development and commercialization of surgical devices and sustained pharmaceutical therapies designed to treat glaucoma. Glaukos is incorporated in Delaware with

principal executive offices located in San Clemente, California. Glaukos' common stock trades on the New York Stock Exchange under the ticker symbol, "GKOS."

17. Thomas W. Burns was a director of Avedro until his resignation on August 6, 2019, a day before Glaukos and Avedro announced that they had entered into the Proposed Transaction. Mr. Burns is the President, CEO, and a member of the board of directors at Glaukos.

18. Gilbert H. Kliman was a director of Avedro until his resignation on August 6, 2019, a day before Glaukos and Avedro announced that they had entered into the Proposed Transaction. Mr. Kliman was a member of the board of directors at Glaukos until his resignation on August 6, 2019. Mr. Kliman is a managing director of InterWest Management Partners X, LLC ("IMP10"), which is the general partner of InterWest Partners X, L.P. ("IW10"). According to the Proxy Statement, IW10 beneficially owned 15.7% of Avedro common stock as of August 30, 2019.

19. As of October 23, 2019, a version of Avedro's website listed Mr. Burns and Mr. Kliman as current Avedro directors:



## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company

20. Avedro bills itself as "a leading hybrid ophthalmic pharmaceutical and medical technology company focused on treating corneal disease and disorders and improving vision to reduce dependency on eyeglasses or contact lens." In fact, according to Avedro, its "proprietary bio-activated pharmaceuticals strengthen, stabilize, and reshape the cornea to treat corneal ectatic disorders and correct refractive conditions."

21. On or around February 14, 2019, Avedro conducted an initial public offering ("IPO") of 5,000,000 shares of common stock at a price to the public of $14.00 per share for total gross proceeds of $70 million. Avedro granted the underwriters a 30-day option to purchase up to 750,000 additional shares of Avedro common stock.

22. After Avedro's IPO, on March 21, 2019 the Company reported increased fourth quarter and full year 2018 revenue. More specifically, the Company announced that its fourth quarter revenue for 2018 increased 82% year-over-year while its full year 2018 revenue increased 37% year-over-year. The Company's gross margin for 2018 was 60.7%, as compared to 51.1% in 2017.

23. On May 9, 2019, the Company announced first quarter 2019 financial results. The Company reported that first quarter revenue for 2019 increased 70% year-over-year, while gross margin increased from 49.2% to 74%.

### B. The Proposed Transaction

24. On August 7, 2019, less than six (6) months after Avedro's IPO, Avedro and Glaukos issued a joint press release announcing that they had entered into a definitive merger agreement to combine in an all-stock transaction. Under the terms of the agreement, Avedro

shareholders will receive an exchange ratio equivalent of 0.365 shares of Glaukos stock for each share of Avedro common stock they own. The press release states, in pertinent part:

**Glaukos and Avedro Announce Definitive Acquisition Agreement**

*Adds Novel Bio-Activated Pharmaceuticals to Glaukos' New Corneal Health Franchise*

*Potential Revenue Synergies from Complementary Product Portfolios that Leverage Glaukos' Commercial Scale, Market-Building Experience and Shared Reimbursement Expertise and Customer Relationships*

*Expanded Pharmaceutical and Device Research, Development and Clinical Capabilities that Enhance Ability to Provide Innovative Hybrid Ophthalmic Therapies to Patients*

*Acquisition Expected to Accelerate Glaukos' Revenue Growth Rate in 2020 and be Accretive to Operating Results and Cash Flows by 2021*

*Executives to Discuss Transaction on Glaukos' Second Quarter Financial Results Conference Call at 1:30 p.m. PDT Today, August 7, 2019*

August 07, 2019 04:10 PM Eastern Daylight Time

SAN CLEMENTE, Calif.--(BUSINESS WIRE)--Glaukos Corporation (NYSE: GKOS), an ophthalmic medical technology and pharmaceutical company focused on novel therapies for the treatment of glaucoma, corneal disorders and retinal diseases, and Avedro, Inc. (Nasdaq: AVDR), a leading hybrid ophthalmic pharmaceutical and medical technology company focused on treating corneal disease and disorders, today announced that the companies have entered into a definitive merger agreement under which Glaukos will acquire Avedro in an all-stock transaction. The transaction, which is subject to Avedro stockholder approval along with other customary closing conditions and regulatory approvals, has been approved by the board of directors of both companies and is expected to be completed in the fourth quarter of 2019.

\*    \*    \*

Avedro's platform uses its proprietary, bio-activated, single-use Photrexa® drug formulations to strengthen corneal tissue and halt progression of keratoconus, a degenerative corneal ectatic disease that affects approximately 1.1 million eyes in the United States. Typically diagnosed in a patient's teenage years, keratoconus is characterized by progressive thinning and weakening of the cornea, resulting in vision loss. Approximately 90% of cases are bilateral and as many as 20% of patients ultimately require a corneal transplant. Conventional treatments address

symptoms but the Avedro platform is the first and only FDA-approved therapy that can stop disease progression. Avedro estimates the total U.S. opportunity for its keratoconus therapy to be approximately $3 billion.

Avedro has also developed a pipeline of novel single application bio-activated topical ophthalmic pharmaceuticals for common refractive conditions, including presbyopia, low myopia and post-cataract refractive error, which are estimated to have a combined U.S. addressable opportunity of approximately $23 billion.

*   *   *

**Transaction Terms and Approvals**

Under the terms of the merger agreement, for each share of Avedro common stock they own, Avedro shareholders will receive an exchange ratio equivalent of 0.365 shares of Glaukos stock.

Based on the parties' volume weighted average prices ("VWAPs") for the last 60 trading days prior to August 6, 2019, the transaction represents a 42% premium for Avedro shareholders. Upon closing, Glaukos shareholders are expected to own approximately 85% of the combined company, with Avedro shareholders expected to own the remaining 15%.

The transaction is subject to customary closing conditions and regulatory approvals, including approval of the merger by stockholders of Avedro. Certain shareholders of Avedro, including OrbiMed, HealthQuest and LAV Agile, which collectively own approximately 41% of the outstanding shares of Avedro common stock, have entered into voting agreements to vote in favor of the transaction.

**Advisors**

Perella Weinberg Partners LP is serving as financial advisor to Glaukos, and O'Melveny & Myers LLP is serving as its legal advisor. Guggenheim Securities is serving as financial advisor to Avedro and Cooley LLP is serving as its legal advisor.

25.     On October 17, 2019, Defendants filed with the SEC a Schedule 14A Definitive Proxy Statement pursuant to Section 14(a) of the Exchange Act (the "Proxy Statement") in connection with the Proposed Transaction.

**C. The Voting Agreement**

26.     Pursuant to the Proposed Transaction, various persons and entities which

collectively own, in the aggregate, approximately 42% of the issued and outstanding shares of Avedro common stock, entered into voting agreements to vote their Avedro shares in favor of, among other things, the adoption of the merger agreement and approval of the consummation of the merger. These stockholders include HealthQuest Partners II, L.P. and Defendant Kong, LAV Agile Limited and LAV Opportunity Limited, OrbiMed Private Investments VI, LP and OrbiMed Royalty Opportunities II, LP, and Defendant Silverstein, Defendant Zurbay, Defendant Lu, Defendant Zadno and Martine and Reza Zadno Revocable Trust, Defendant Palmisano and Robert J. Palmisano 2010 Trust, and Thomas E. Griffin.

### D. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

27. The Proxy Statement, which recommends that Avedro shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Avedro's and Glaukos' financial projections; (ii) the financial analyses performed by Avedro's financial advisor, Guggenheim Securities, LLC ("Guggenheim"), in connection with its fairness opinion; and (iii) Guggenheim's potential conflicts of interest.

28. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Avedro Board Recommendation and Its Reasons for the Merger; (ii) Avedro Unaudited Prospective Financial Information; (iii) Opinion of Financial Advisor to Avedro; and (iv) Other Considerations.

29. Unless and until the material misstatements and omissions (referenced below) are remedied before the November 19, 2019 shareholder vote on the Proposed Transaction, Avedro shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Avedro's and Glaukos' Financial Projections

30. The Proxy Statement omits material information concerning Avedro's and Glaukos' financial projections.

31. The Proxy Statement provides that, "[i]n connection with its evaluation of the Merger, the Avedro Board considered certain unaudited, non-public financial projections prepared by Avedro management with respect to Avedro as a standalone company, Glaukos as a standalone company, and estimates for the combined company which were provided by Avedro management to Guggenheim Securities for the purposes of its financial analyses and opinion[.]"

32. The Proxy Statement provides a "table present[ing] a selected summary of the management projections with respect to its existing Epi-Off commercial keratoconus franchise, and Epi-On (Phase 3 clinical study underway) assuming a 100% probability of success" (the "Avedro Base Projections").

33. The Proxy Statement provides "a table present[ing] a selected summary of the non-probability-adjusted management projections with respect to Avedro pipeline, including PiXL for refractive vision correction (*e.g.* presbyopia)" (the "Avedro Pipeline Case").

34. The Proxy Statement provides that, in addition to the Avedro Pipeline Case, "Avedro management provided Guggenheim Securities an assumed 30%-40% probability of success to commercialize Avedro pipeline products, including PiXL for refractive vision correction (e.g. presbyopia) for purposes of conducting its financial analysis" (the "Avedro Probability of Success Adjusted Pipeline Projections," and together with the Avedro Base Projections and Avedro Pipeline Case, the "Avedro Projections").

35. The Proxy Statement, however, fails to disclose the following concerning the Avedro Projections: (1) all line items used to calculate (i) EBIT, and (ii) NOPAT; (2) the Avedro

9

Probability of Success Adjusted Pipeline Projections, and all underlying line items; and (3) a reconciliation of all non-GAAP to GAAP metrics.

36. The Proxy Statement provides a "table present[ing] a selected summary of certain non-probability-adjusted projections with respect to existing Glaukos commercial portfolio (including iStent and iStent Inject) and near-term product approvals (including Supra, Infinite and Santen MicroShunt)," which was prepared by Avedro management (the "Glaukos Business Case").

37. The Proxy Statement provides that, in addition to the Glaukos Business Case, "Avedro management provided Guggenheim Securities probabilities of success to commercialize the Glaukos pipeline products (Supra: 50%; Infinite: 80%-90%; and MicroShunt: 80%-90%) for purposes of conducting its financial analysis" (the "Glaukos Probability of Success Adjusted Base Projections Prepared by Avedro Management").

38. The Proxy Statement provides a "table present[ing] a selected summary of certain non-probability-adjusted projections with respect to Glaukos pipeline (including iDose and iStent SA)," which was prepared by Avedro management (the "Glaukos Pipeline Case").

39. The Proxy Statement provides that, in addition to the Glaukos Pipeline Case, "Avedro management provided Guggenheim Securities probabilities of success to commercialize Glaukos pipeline products (iDose: 50%-60% and iStent SA: 50%-60%) for purposes of conducting its financial analysis" (the "Glaukos Probability of Success Adjusted Pipeline Projections Prepared by Avedro Management," and together with the Glaukos Business Case, Glaukos Pipeline Case, and Glaukos Probability of Success Adjusted Base Projections Prepared by Avedro Management, the "Glaukos Projections").

40. The Proxy Statement, however, fails to disclose the following concerning the

Glaukos Projections: (1) all line items used to calculate (i) EBIT, and (ii) NOPAT; (2) the Glaukos Probability of Success Adjusted Base Projections Prepared by Avedro Management, and all underlying line items; (3) the Glaukos Probability of Success Adjusted Pipeline Projections Prepared by Avedro Management, and all underlying line items; and (4) a reconciliation of all non-GAAP to GAAP metrics.

41. The Proxy Statement provides a "table present[ing] a selected summary of combined revenue synergies projections and cost savings synergies projections" (the "Combined Synergies Projections").

42. The Proxy Statement, however, fails to disclose the following concerning the Combined Synergies Projections: (1) all line items used to calculate (i) NOPAT and (ii) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

43. When a company discloses non-GAAP financial metrics in a Proxy Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[2]

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-

44.     The disclosure of Avedro's and Glaukos' projected financial information is material because it would provide Avedro shareholders with a basis to project the future financial performance of Avedro and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Avedro and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

45.     Accordingly, in order to bring the Proxy Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the Avedro Projections, Glaukos Projections, and the Combined Synergies Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

46.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Avedro shareholders.

---

speech.html (footnotes omitted) (last visited Oct. 24, 2019) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

### 2. Material Omissions Concerning Guggenheim's Financial Analyses

47. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Guggenheim.

48. The Proxy Statement fails to disclose the following concerning Guggenheim's "*Avedro Discounted Cash Flow Analyses*" and "*Glaukos Discounted Cash Flow Analyses*": (1) the terminal values Guggenheim derived for both Avedro and Glaukos in its analyses; and (2) the individual inputs and assumptions underlying the (i) discount rate range of 12.25% – 14.75% for Avedro, and of 9.75% – 12.25% for Glaukos, and (ii) perpetual growth rate range of 2.0% – 3.0% for Avedro and Glaukos.

49. The Proxy Statement fails to disclose the following concerning Guggenheim's "*PF Synergized Discounted Cash Flow Analysis*"[3]: (1) the terminal values Guggenheim utilized in its analyses; and (2) the individual inputs and assumptions underlying the (i) discount rate range of 9.75% – 12.25%, and (ii) perpetual growth rate range of 2.5%.

50. The Proxy Statement fails to disclose the following concerning Guggenheim's "*Precedent One-Day Stock Price Premiums*": (1) the individual multiples and financial metrics of each of the selected transactions utilized by Guggenheim in its analysis; and (2) the individual premiums paid in each transaction utilized by Guggenheim in its analysis.

51. The Proxy Statement fails to disclose the following concerning "*Avedro's and Glaukos' Wall Street Equity Research Analyst Stock Price Targets*": (1) the individual price targets for Avedro and Glaukos observed by Guggenheim in its analysis; and (2) the sources of those price targets.

52. The valuation methods, underlying assumptions, and key inputs used by

---

[3] "PF" is defined in the Proxy Statement as "pro forma."

Guggenheim in rendering its purported fairness opinion must be fairly disclosed to Avedro shareholders. The description of Guggenheim's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without this information, the Company's shareholders are unable to fully understand Guggenheim's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Avedro shareholders.

### 3. Material Omissions Concerning Guggenheim's Potential Conflicts of Interest

53. The Proxy Statement omits material information concerning potential conflicts of interest involving Guggenheim.

54. The Proxy Statement provides that:

> During the two years prior to the rendering of its opinion, Guggenheim Securities has been engaged by Avedro to provide financial advisory and other investment banking services in connection with matters unrelated to the Merger, for which Guggenheim Securities has received customary fees. Specifically during the past two years, Guggenheim Securities acted as underwriter and co-manager in connection with Avedro's IPO.

55. The Proxy Statement, however, fails to disclose the amount of fees Guggenheim received in connection with the "financial advisory and other investment banking services" Guggenheim provided to Avedro.

56. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

57. The omission of the above-referenced information renders the Proxy Statement

materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Avedro shareholders.

### COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

58. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

60. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

61. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

62. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

63. Because of the false and misleading statements and omissions in the Proxy

Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

64. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

66. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

67. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited

access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

68. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

69. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

70. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.       In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.       Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.       Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.       Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 24, 2019

Of Counsel:

Zachary Halper
Daniel Sadeh
HALPER SADEH LLP
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com
Email: sadeh@halpersadeh.com

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
Email: bfarnan@farnanlaw.com
Email: mfarnan@farnanlaw.com

*Counsel for Plaintiff*